Case 2:22-cv-00094   Document 59   Filed on 09/10/24 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
September 10, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| BANQUETE INDEPENDENT SCHOOL DISTRICT, § § § Plaintiff, § § VS. § THE ALLIANCE FOR COMMUNITY § SOLUTIONS, LTD., § § Defendant. § | CIVIL ACTION NO. 2:22-CV-00094 |

## MEMORANDUM AND RECOMMENDATION

Pending is Banquete Independent School District's ("Banquete") Motion to Plea to the Jurisdiction to which The Alliance for Community Solutions, Ltd. ("ACS") has responded and Banquete has replied as well as Banquete's Amended Motion to Exclude Expert Witness Joe Abrams to which ACS has responded. (D.E. 35; D.E. 44; D.E. 47; D.E. 49 and D.E. 51). For the reasons stated below, the undersigned **RECOMMENDS** Banquete's Motions be **DENIED**. (D.E. 35 and D.E. 47).

## I.   JURISDICTION

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. This case was referred to the undersigned United States Magistrate Judge for case management pursuant to 28 U.S.C. § 636.

## II.     MOTION TO PLEA TO JURISDICTION  (D.E. 47; D.E. 49; D.E. 51)

As argued by ACS, Banquete now acknowledges in its reply "that a plea to the jurisdiction is not a recognizable motion in federal court and recognizes its error in labeling its motion as a plea to the jurisdiction." (D.E. 51, Page 1).  Plaintiff then requests the Court construe the Motion to Plea as a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure as the standards for both Motions "are nearly identical."  (D.E. 51, Pages 1-2).  ACS, among other arguments discussed below, asserts the Motion to Plea is more properly construed as a motion for summary judgment and Banquete cannot meet its burden.

The undersigned is dissatisfied with Banquete's failure to file an appropriate motion for this Court's consideration of jurisdiction.  Rather than correcting its error by withdrawing its state court motion and filing a motion to dismiss, Banquete simply argues in its short reply that the Court should construe its improper motion as one filed pursuant to Federal Rule of Civil Procedure 12(b)(1), which makes the briefing and consideration of this issue unnecessarily ambiguous.  However, the undersigned has considered Banquete's Motion as one filed pursuant to 12(b)(1) as requested and recommends it be **DENIED**.

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home*

*Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted) ("A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.")  When the facts in the complaint supporting subject matter jurisdiction are questioned, "[a] defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence" and "[t]he Court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c)." *Teamer v. Napolitano*, No. H-11-1808, 2012 WL 1551309, at *4 (S.D. Tex. May 1, 2012) (citations omitted); *Montez v. Dep't of the Navy*, 392 F.3d 147, 149 (5th Cir. 2004) (When considering a Rule 12(b)(1) motion, the court "is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case").  Further, the "burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (If a Rule 12(b)(1) motion is filed in conjunction with other motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits) (citation omitted).

There is no dispute that Texas public school districts are entitled to governmental immunity from liability for state law claims and, without a valid waiver of that immunity, ACS' counterclaims for breach of contract and conversion must be dismissed. *Doe v. Humble ISD*, No. 4:18-cv-4281, 2019 WL 3288385, at *2 (S.D. Tex. July 22, 2019) (citations omitted) ("Governmental immunity protects the state and 'political subdivisions

of the State, including counties, cities, and school districts' from state law claims unless such immunity is expressly waived by the legislature.") (citation omitted); *Alamo Forensic Serv., LLC v. Bexar Cty., Tex.*, No. SA-20-cv-38-XR, 2020 WL 2559956, at *2 (S.D. Tex. May 19, 2020) (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) ("Unless the party suing the governmental entity meets its burden of establishing that governmental immunity is waived, the trial court lacks jurisdiction to consider the claim."). ACS argues Banquete waived immunity as to both counterclaims by initially suing ACS. Alternatively, ACS argues the Texas legislature has waived immunity from suit when a governmental entity enters in a contract for goods and services for the purpose of adjudicating claims for breach of that contract and further argues the "Court should treat ACS's conversion claim, or allow ACS to replead its conversion claims, as a Section 1983 takings claim." (D.E. 49, Page 19).[1]

Reviewing ACS' pleadings, ACS does not address Banquete's immunity or any alleged waiver of that immunity. Under "Jurisdiction and Venue," ACS states only that "Banquete ISD has submitted itself to the jurisdiction of this Court." (D.E. 18, Page 7). Therefore, the undersigned finds ACS' pleading to be lacking. However, as ACS would

---

[1] ACS also argues that Banquete failed to address ACS' conversion claim in its Motion and therefore "it is not properly raised as an issue for the Court." (D.E. 49, Page 19). The undersigned finds this argument to be without merit as Banquete clearly argues all of ACS' counterclaims should be dismissed. Further, the undersigned notes ACS' latest responsive pleading titled "Third Amended Answer and Affirmative Defenses" and docketed on November 30, 2023 does not include its counterclaims. (D.E. 45). However, the undersigned has reviewed ACS' previous filing titled "Third Amended Answer, Affirmative Defenses, and Counterclaims" docketed on February 13, 2023. (D.E. 18).

undoubtedly request to file another amended answer and counterclaims to correct this deficiency, the undersigned has reviewed the parties' arguments on this issue.

Banquete has chosen to engage in this litigation, seeking monetary damages. Therefore, as recognized by the Texas Supreme Court, "it would be fundamentally unfair to allow a governmental entity to assert [] claims against a party while claiming it had immunity as to the party's claims against it" which are "germane to, connected with, and properly defensive of the [governmental entity's] claims, to the extent [the counter-claimant's] claims offset those asserted by the [governmental entity]." *St. Maron Prop., LLC v. City of Houston*, 78 F.4th 754, 764 (5th Cir. 2023) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 373-75 (Tex. 2006)). Banquete has not waived its immunity against ACS' counterclaims because it filed suit, rather, "the scope of governmental immunity simply does not reach the defensive counterclaims to the extent that any recovery on the counterclaims serves as an 'offset' against the government's recovery." *Nazari v. State*, 561 S.W.3d 495, 502-3 (Tex. 2018) (citing *Reata*, 197 S.W.3d at 375-78) ("Once it asserts affirmative claims for monetary recovery, the [governmental entity] must participate in the litigation process as an ordinary litigant [but] the opposing party's claims can operate only as an offset to reduce the government's recovery"). Accordingly, the governmental immunity does not bar ACS' counterclaims against Banquete to the extent ACS can obtain a monetary recovery as an offset to any monetary recovery Banquete would obtain on its claims against ACS. *Reata*, 197 S.W.3d at 375 ("If the opposing party's claims can operate only as an offset to reduce the government's

recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted.  Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity.")  Therefore, the undersigned recommends Banquete's Motion be **DENIED**.  (D.E. 47).[2]

### III.    MOTION TO EXCLUDE  (D.E. 35; D.E. 44)

Banquete seeks to exclude Joe Abrams, Executive Director and Chairman of ACS, as an expert, asserting (1) he has a financial interest in the outcome of the case and therefore, his testimony is irrelevant because he cannot give unbiased expert testimony; (2) his testimony regarding the accuracy and completeness of the assessment of ACS' work by Banquete's expert, Mr. Gregory Richards,[3] is unreliable and based on insufficient facts because Banquete "was not given any of the documents [including a plan layout]that [ACS] states were disclosed to [Banquete] while ACS was performing the Project" (D.E. 35,

---

[2] As there is a recommendation that Banquete's Motion be denied for the reasons stated above, the undersigned declines to consider the parties' additional arguments regarding immunity at this time. Whether a waiver of immunity exists for any amount beyond the offset is a question for a different day until there are proper motions and pleadings filed and ACS makes a final determination of what its counterclaims are.

[3] Greg Richards is Banquete's disclosed expert.  (D.E. 19).  Banquete states in its expert disclosure that "Mr. Richards (of KLC Video Security) has experience as a licensed Alarms Installer and has worked with several school districts in the State of Texas and Arkansas to install cable, interior and exterior camera[s], access control, bus camera systems; as well as programming, training, design, and project management; and finally has worked with school districts to design safety and security systems and coordinate to construct these systems with contractors, engineers, and architects."  (D.E. 19, Page 2).

Pages 5-6);[4] and (3) he is otherwise not qualified to testify as an expert witness as he lacks the necessary expertise because the work to be performed included "the construction of significant physical improvements and modifications to [Banquete's] campus" and in his deposition, Mr. Abrams stated he is not and has not ever been a general contractor, he does not have any firsthand experience in commercial construction, and ACS relies on video and surveillance experts, including law enforcement, when installing electronic monitoring and communication systems. (D.E. 35, Pages 6-7).[5] ACS responds that Banquete's

---

[4] Banquete asserts ACS falsely claims it provided certain documents to Banquete "while ACS was performing the Project" which detailed the scope of its work, including certain plan layouts for all doors and locks, detailed illustrations of vestibules to be installed, work to be performed on exterior doors and a spreadsheet of all doors and locks. (D.E. 35, Page 5-6). At his deposition, Mr. Abrams stated he addressed Mr. Richards' "report point by point" and that Mr. Richards "wasn't provided truly the definition of even what the project was…because he completely omitted many sections of functionality." (D.E. 35-2, Page 33). Mr. Abrams further stated Mr. Richards "addressed only two or three of the sections of more than a dozen that were in the original scope of work" in spite of the "literally hundreds of pages of documentation [provided to Banquete after the overview document was presented]," noting Mr. Richards himself "made reference in his document that …there was literally very little documentation provided to him about what the project was…a decided lack of documentation." (D.E. 35-2, Pages 33-34). Mr. Richards, at his deposition, stated he "he could only go off of what was given to me in the beginning" when writing his report assessing the work ACS did and "I would like more. I would want more. But given what I was given, that's what I went off of…[and] I have the layouts now." (D.E. 44-2, Pages 7-8).

[5] Mr. Abrams stated he had never been a general contractor but had built houses and could not "think of an aspect of a home that I don't know how to build and haven't done myself." (D.E. 35-2, Page 5). He further stated he relied "a lot on the experts of our members in law enforcement who understand what their experiences have been…my expertise is focused [on] the understanding of how--what is the problem that our member is trying to solve, what technologies or solutions are available or need to be developed in order to do that and in building those connections out to people who are capable, who really have the true expertise within their specific area to solve that problem; and then we test it." (D.E. 35-2, Page 6). He also stated his "construction-related projects specific to school districts [was] limited" but "[i]nvolved minor construction" of several security vestibules in front of schools as well as a "communications/rapid notification project…to connect the school district to the first responder network." (D.E. 35-2, Page 8).

arguments are without merit and are not supported by precedent. Having considered the Motion, the undersigned recommends it be denied for the reasons stated below.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The United States Supreme Court designates the trial courts to act as gatekeepers to ensure expert testimony is admitted only if it is relevant and reliable. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 371 (5th Cir. 2000) (A district court is to use its discretion in admitting or excluding expert testimony under Rule 702); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (citations omitted) ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.") "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (citation omitted). Under most circumstances, a party complaining of a proffered expert's opinions can use the traditional means of "[v]igorous cross-examination, presentation of

contrary evidence, and careful instruction on the burden of proof [as] the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert*, 509 U.S. at 596).

When considering the admissibility of expert testimony, the court should determine whether the proffered expert can assist the trier of fact by "bring[ing] to the jury more than the lawyers can offer in argument." *Id.* (citation omitted). Further, particularly in a jury trial setting, the court should not replace the adversary system and should not "weigh the expert testimony to the point of supplanting the jury's fact-finding role." *Id.* (citations omitted) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.")

Mr. Abrams is designated to testify as to the following:

(1) The extent and sufficiency of the work performed by ACS prior to Banquete ISD demanding that ACS cease work and leave its property in October 2021;
(2) The accuracy and completeness of the assessment of ACS' work summarized in the report prepared for Banquete ISD by Greg Richards;
(3) The sufficiency of the cost estimates provided by Mr. Richards;
(4) The amount of damages ACS is seeking in its counterclaims.

(D.E. 23, Pages 1-2).

First, the Fifth Circuit clearly permits testimony by a witness even when fees to be paid to that witness are contingent on the outcome of a trial as "the credibility of the compensated witness, like that of the witness promised a reduced sentence, is for a properly instructed jury to determine." *United States v. Cervantes-Pacheco*, 826 F.2d 310 (5th Cir. 1987). Similarly, in this case, the factfinder can weigh the extent to which Mr. Abrams' financial interest in the outcome of the case bears upon his testimony's credibility.

*Maldonado v. Liberty Ins. Co.*, No. 2:21-cv-134-BR, 2022 WL 16552651, at *2-3 (N.D. Tex. Aug. 9, 2022) (citations omitted) (Reviewing cases applying *Cervantes-Pacheco* in civil settings where contingent fee based expert testimony was admissible because the "trier of fact should be able to discount for so obvious a conflict of interest," and "the veracity of a witness [is] to be tested by cross-examination, and the credibility of his testimony [is] to be determined by a properly instructed jury.")  Further, the reliability of Mr. Richards' opinion and report on ACS' work may certainly be challenged if he did not review sufficient documentation and whether Banquete received this documentation while ACS was performing work or later during the discovery process is simply a disputed fact to be taken into consideration by the jury as needed.  Lastly, Mr. Abrams is not designated as a construction expert for this case involving the design and installation of a security system.  (D.E. 44, Page 13).

      While Banquete uses the key words relevancy and reliability, its arguments actually relate to the weight to be given to Mr. Abrams' testimony, not to the admissibility.  The Court should not substitute its own judgment for that of the jurors who will be the factfinders in this case.  *Daubert*, 509 U.S. at 596.  Instead, Banquete should be afforded the opportunity to cross examine Mr. Abrams about these issues and the jury may then determine the weight to be given to his testimony after being given proper instructions.  Therefore, the undersigned recommends Banquete's Motion to Exclude be **DENIED**.  (D.E. 35).

## IV.   CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** Banquete's Motions be **DENIED**.  (D.E. 35 and D.E. 47).

ORDERED on September 10, 2024.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).